IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID ZAMOS, | CIVIL ACTION |
| Plaintiff, | |
| v. | No. 16-5038 |
| MCNEIL-PPC, INC. a division of JOHNSON & JOHNSON, and JOHNSON & JOHNSON CONSUMER INC., | |
| Defendants. | |

**MEMORANDUM**

**ROBERT F. KELLY, Sr. J.**              **JANUARY 5, 2017**

Presently before the Court is Defendants, Johnson and Johnson Consumer Inc. ("J&J Consumer") and McNeil-PPC, Inc.'s ("McNeil") (collectively "Defendants") Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), Plaintiff, David Zamos' ("Plaintiff") Response in Opposition thereto, and Defendants' Reply. For the reasons set forth below, Defendants' Motion is granted.

**I.     BACKGROUND**

This case revolves around a dispute regarding recovery of "Enhanced Severance Pay" that was offered to Plaintiff by Defendants and allegedly accepted, but never actually paid. Subsequently, Plaintiff filed a three count Complaint asserting contract-based state law claims alleging breach of contract (Count I), contractual bad faith (Count II), and estoppel (Count III).[1] (See Compl.) Defendants have moved to dismiss all three counts of Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff originally initiated suit in the

---

[1] Pennsylvania law applies because federal courts sitting in diversity cases must apply the substantive law of the states where they sit. Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938).

Court of Common Pleas for Bucks County, Pennsylvania, but Defendants removed it to this Court based on diversity jurisdiction on September 20, 2016.[2]  (Doc. No. 1.)

Plaintiff worked for Defendants as a Senior Director of Regulatory Compliance.  (Compl. ¶ 5.)  In early February, 2016, Plaintiff was informed that he was being "separated from employment" with Defendants, and that his last day of employment was to be March 24, 2016.  (Id. ¶ 17.)  Separately, Plaintiff was told by the Vice President of Quality and Compliance not to appear at work after February 26, 2016.  (Id. ¶ 18.)  Incident to his departure from Defendants, Plaintiff was provided a proposed separation agreement (the "Proposed Agreement") by the manager of human resources in February of 2016.  (Id. ¶ 21.)

The Proposed Agreement outlined the amount of severance pay available to Plaintiff under the Severance Pay Plan of Johnson and Johnson and U.S. Affiliated Companies (the "Plan") and the terms and conditions of eligibility.  (See Compl., Ex. D.)  Plaintiff was eligible to receive $17,546.15 in "Basic Severance Pay" if he chose not to sign the Proposed Agreement or $114,050 in "Enhanced Severance Pay" if he did execute the Proposed Agreement.  (See id.)  The Proposed Agreement included a release of claims, including potential claims under the Age Discrimination and Employment Act ("ADEA"), and other various terms.  (See id.)  Because Plaintiff was older than 40 years of age and in the protected age group, the Proposed Agreement also included the preconditions required by the Older Worker Benefits Protection Act ("OWBPA") to render any signed release enforceable against an ADEA claim.  29 U.S.C. §626(f)(1).  The Proposed Agreement adopted the OWBPA-mandated 21-day period as the

---

[2] Plaintiff devotes great attention in his opposition brief to whether McNeil exists as a legal entity.  (Pl.'s Resp. to Mot. to Dismiss at 1-5.)  As we have already recognized in our denial of Plaintiff's previous motion to remand, on June 29, 2015, McNeil merged with several Johnson and Johnson companies and then changed its name to J&J Consumer.  (Doc. No. 12.)  Thus, the two entities Plaintiff names as defendants are not separate entities; rather, McNeil is simply the former name of J&J Consumer.  Since this distinction is irrelevant to our decision today, we will simply refer to McNeil and J&J Consumer as "Defendants" to avoid any possible confusion.

deadline for Plaintiff to sign it. (See Compl., Ex. D.) The Proposed Agreement also included a seven day revocation period if Plaintiff signed it. (Id.) Paragraph 9 of the Proposed Agreement read, in part, that Plaintiff was "strongly encouraged to consult an attorney regarding this [Proposed] Agreement." (Id.)

Defendant consulted an attorney and objected to two provisions in the Proposed Agreement. (Id. ¶ 28.) Plaintiff alleges that after his attorney contacted Defendants regarding his objections, Defendants took more than 21 days to respond and claimed that the time allotted to sign the Proposed Agreement in order to receive "Enhanced Severance Pay" had expired. (Id. ¶ 25.)

## II. STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). Pursuant to Rule 12(b)(6), the defendant bears the burden of demonstrating that the plaintiff has failed to set forth a claim from which relief may be granted. Fed. R. Civ. P. 12(b)(6); see also Lucas v. City of Phila., No. 11-4376, 2012 WL 1555430, at *2 (E.D. Pa. May 2, 2012) (citing Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005)). In evaluating a motion to dismiss, the court must view any reasonable inferences from the factual allegations in a light most favorable to the plaintiff. Buck v. Hamilton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2002).

The United States Supreme Court ("Supreme Court") set forth in Twombly, and further defined in Iqbal, a two-part test to determine whether to grant or deny a motion to dismiss. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). The United States Court of Appeals for the Third Circuit ("Third Circuit") has noted that

these cases signify the progression from liberal pleading requirements to more "exacting scrutiny" of the complaint. Wilson v. City of Phila., 415 F. Appx. 434, 436 (3d Cir. 2011).

Initially, the court must ascertain whether the complaint is supported by well-pleaded factual allegations. Iqbal, 556 U.S. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Twombly, 550 U.S. at 555. Conclusions of law can serve as the foundation of a complaint, but to survive dismissal they must be supported by factual allegations. Iqbal, 556 U.S. at 679. These factual allegations must be explicated sufficiently to provide a defendant the type of notice that is contemplated by Rule 8. See Fed. R. Civ. P. 8(a)(2) (requiring a short and plain statement of the claim showing that the pleader is entitled to relief); see also Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). Where there are well-pleaded facts, courts must assume their truthfulness. Iqbal, 556 U.S. at 679.

Upon a finding of a well-pleaded complaint, the court must then determine whether these allegations "plausibly" give rise to an entitlement to relief. Id. at 679. This is a "context specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. Plausibility compels the pleadings to contain enough factual content to allow a court to make "a reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. 544 at 570). This is not a probability requirement; rather plausibility necessitates "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility.'" Id. (quoting Twombly, 550 U.S. at 557). In other words, a complaint must not only allege entitlement to relief, but must demonstrate such entitlement with sufficient facts to nudge the claim "across the line from

conceivable to plausible." Id. at 683; see also Holmes v. Gates, 403 F. App'x 670, 673 (3d Cir. 2010).

The general rule is that "a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." W. Penn Allegheny Health Sys., Inc. v. UPMC, 627 F.3d 85, 97 n.6 (3d Cir. 2010) (citing In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)). "However, an exception to the general rule is that a 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" Burlington, 114 F.3d at 1426 (citing Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir. 1996)); see also Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."). The United States Court of Appeals for the Third Circuit ("Third Circuit") explained:

> The reason that a court must convert a motion to dismiss to a summary judgment motion if it considers extraneous evidence submitted by the defense is to afford the plaintiff an opportunity to respond. When a complaint relies on a document, however, the plaintiff obviously is on notice of the contents of the document, and the need for a chance to refute evidence is greatly diminished.

Pension Benefit, 998 F.2d at 1196-97 (citations omitted).

### III.  DISCUSSION

Defendants argue that Plaintiff's Complaint should be dismissed on its merits for several reasons including: (1) Plaintiff's claim for breach of contract fails because the Proposed Agreement never became a "contract," due to Plaintiff's rejection of its terms; (2) Plaintiff's claim of contractual bad faith fails because, under Pennsylvania law, it cannot be asserted as an independent cause of action; and (3) Plaintiff's claim for estoppel fails because he has not

5

pleaded any express "promise" made by Defendants on which he detrimentally relies, as required for promissory estoppel, and equitable estoppel is an affirmative defense and not an independent cause of action. (Defs.' Mot. to Dismiss at 5; Defs.' Reply at 5-7.)

### A. Breach of Contract (Count I)

We agree with Defendants' contention that Plaintiff's breach of contract claim should be dismissed because he fails to allege the existence of a contract. (See Defs.' Mot. to Dismiss at 6-7.) In Pennsylvania, "[t]hree elements are necessary to plead properly a cause of action for breach of contract: '(1) the existence of a contract including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages.'" Williams v. Nationwide Mut. Ins. Co., 750 A.2d 881, 884 (Pa. Super. Ct. 2000) (quoting CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)). In order for a contract to be formed, there must be an offer, acceptance, and an exchange of consideration. Mundie v. Christ United Church of Christ, 987 A.2d 794, 801 (Pa. Super. Ct. 2009).

Plaintiff fails to understand what is required to form a proper contract under Pennsylvania law. We do agree with Plaintiff that an offer was made for Enhanced Severance Pay when Defendants provided the Proposed Agreement to him in February 2016. (Compl. ¶ 46.) However, Plaintiff's idea of what constitutes an "acceptance" is completely inaccurate. In his Complaint, Plaintiff states that "[m]ost of the offer was acceptable, and was conditionally accepted, but for two items of objections." (Id. ¶ 47.) Plaintiff even calls this "conditional acceptance" the "classic definition of a contract." (Pl.'s Opp. to Mot. to Dismiss at 7.)

What Plaintiff fails to realize is that under Pennsylvania law, this "conditional acceptance" constitutes a counter-offer and not an acceptance. See Hatalowich v. Redevelopment Auth. of City of Monessen, 454 Pa. 481, 484 (1973) (holding that "a reply to an

6

offer which purports to accept, but adds qualifications or makes acceptance conditional, is not an acceptance, but rather a counter-offer"); Del. River Preservation Co., Inc. v. Miskin, 923 A.2d 1177, 1181-82 (Pa. Super. Ct. 2007) ("If a reply [to an offer] does not unequivocally accept the terms of an offer, then no contract is formed."). In the Complaint, Plaintiff admittedly did not unequivocally accept the terms of Defendants' offer in light of his statement that "[m]ost of the offer was acceptable, and was conditionally accepted, but for two items of objection." (Compl. ¶ 47.) Additionally, the March 1, 2016, letter in which Plaintiff purportedly "conditionally accepted" the Proposed Agreement, does not even make mention that Plaintiff accepted the offer, but for those two terms. (Defs.' Mot. to Dismiss, Ex. 2.) Rather the letter is informing Defendants that Plaintiff's counsel has advised him not to sign the Proposed Agreement and the reasons for doing so. (Id.)

Plaintiff was given 21 days to accept the Proposed Agreement and simply failed to do so.[3] Pennsylvania law is quite clear that a conditional acceptance is not an acceptance, but rather a counter-offer. See Hatalowich, 454 Pa. at 484. With all that considered, it is not evident whether Plaintiff even conditionally accepted the offer or simply rejected it. Either way, we find that Plaintiff has failed to adequately allege that he accepted the Proposed Agreement; therefore, his breach of contract claim must be dismissed. Williams, 750 A.2d at 884.

---

[3] Plaintiff had to sign the Proposed Agreement by March 3, 2016, as that was 21 days after February 11, 2016. Throughout his Compliant, Plaintiff reiterates the fact that Defendants took more than 21 days to respond to his March 1st letter. However, Defendants claim that they did not receive the letter until March 3, 2016. (Defs.' Mot. to Dismiss at 6.) So, in reality, even if Defendants received the letter the date that it was sent, Plaintiff only gave Defendants two days to respond within Plaintiff's 21 day period. Putting the minimal possible response window aside, whether Defendants took 21 days to respond is largely irrelevant as there is no requirement for Defendants to respond by a certain time.

**B. Contractual Bad Faith/Breach of the Covenant of Good Faith and Fair Dealing[4]
(Count II)**

Under Pennsylvania law, Plaintiff cannot bring an independent claim for breach of the covenant of good faith and fair dealing regarding his severance agreement.  Plaintiff cites to numerous insurance cases finding that you could bring an independent cause of action for breach of the covenant of good faith and fair dealing.  (Pl.'s Opp. to Mot. to Dismiss at 7-9.)  According to Plaintiff, "[a]n insurance policy is merely a contract, and the case law [should] appl[y] here."  (Id. at 8.)

Plaintiff has failed to recognize that Pennsylvania courts, in a vast majority of the cases, have not permitted breach of the covenant of good faith and fair dealing as an independent cause of action outside of the insured-insurer relationship.  See, e.g., Blue Mt. Mushroom Co. v. Monterey Mushroom, Inc., 246 F. Supp. 2d 394, 400-01 (E.D. Pa. 2002) ("Pennsylvania law does not recognize a separate claim for breach of implied covenant of good faith and fair dealing."); McGrenaghan v. St. Denis Sch., 979 F. Supp. 323, 328 (E.D. Pa. 1997) ("In the context of employment contracts, Pennsylvania law does not recognize a cause of action for breach of the implied covenant of good faith and fair dealing which is separate from a breach of contract action."); Drysdale v. Woerth, No. 98-3090, 1998 WL 966020, at *3 (E.D. Pa. Nov. 18, 1998) ("While the Commonwealth has recognized a general duty of good faith and fair dealing in the performance of a contract, Pennsylvania does not recognize a claim for breach of covenant of good faith and fair dealing as an independent cause of action."); see also CRS Auto, 645 F. Supp. 2d at 369 ("In order to plead a cause of action for breach of the covenant of good faith,

---

[4] Plaintiff refers to Count II as contractual bad faith; however in Pennsylvania, this is synonymous with breach of the covenant of good faith and fair dealing.  See CRS Auto Parts, Inc. v. Nat'l Grange Mut. Ins. Co., 645 F. Supp. 2d 354, 369-71 (E.D. Pa. 2009) (referencing case law interpreting the covenant of good faith and fair dealing when analyzing the plaintiff's contractual bad faith claim).  Since both terms are used interchangeably, we will refer to this claim as the breach of the "covenant of good faith and fair dealing" throughout our analysis to avoid confusion.

whether it is an express or implied covenant, a plaintiff must [first] properly plead the elements of a claim of breach of contract.") (citations omitted).

Thus, contrary to Plaintiff's beliefs, Pennsylvania law has recognized a clear distinction between insurance contracts and other contracts when it comes to bringing independent claims for breach of the covenant of good faith and fair dealing. See Northview Motors,Inc. v. Chrysler Motors Corp., 227 F.3d 78, 91 (3d Cir. 2000) (noting that Pennsylvania courts "have recognized an independent cause of action for breach of a duty of good faith and fair dealing only in very limited circumstances," such as in the context of agreements between insurers and insured, and franchisors and franchisees). Outside of these limited circumstances, "a breach of such covenant is a breach of contract action, not an independent action for breach of a duty of good faith and fair dealing." McHale v. NuEnergy Grp., No. 01-4111, 2002 WL 321797, at *8 (E.D. Pa. Feb. 27, 2002) (citation omitted); see also LSI Title Agency, Inc. v. Eval. Servs., Inc., 951 A.2d 384, 391 (Pa. Super. Ct. 2008) (citing cases holding that Pennsylvania does not recognize separate breach of contractual duty of good faith and fair dealing where that claim is subsumed by separately pleaded breach of contract claim.); In re K-Dur Antitrust Litig., 338 F. Supp. 2d 517, 549 (D.N.J. 2004) ("Although Pennsylvania imposes a duty of good faith and fair dealing on each party in the performance of contracts, there is no separate cause of action for breach of these duties.").

Here, we find no reason to divert from the numerous decisions interpreting the issue. We hold that Plaintiff's claim for breach of the covenant of good faith and fair dealing is subsumed by his separately pleaded breach of contract claim in Count I. Plaintiff has relied on insurance policy cases and has failed to cite to any case law that would indicate that severance agreement contracts, like the one before us today, would be included in the "limited circumstances" wherby

9

Pennsylvania recognizes the breach of the covenant of good faith and fair dealing as an independent action.[5] See Northview, 227 F.3d at 91.

### C. Estoppel (Count III)

We agree with Defendants that Plaintiff's estoppel claim should be dismissed no matter if it is brought as a promissory estoppel claim or an equitable estoppel claim. Plaintiff is unclear in both his Complaint and his opposition what theory of estoppel he is relying on, so we will address both.

Promissory estoppel exists where: "(1) the promisor made a promise that [it] should have reasonably expected would induce action or forbearance on the part of the promisee; (2) the promisee actually took action or refrained from taking action in reliance on the promise; and (3) injustice can be avoided only by enforcing the promise." Sullivan v. Chartwell Inv. Partners, LP, 873 A.2d 710, 717-18 (Pa. Super. Ct. 2005) (citing Shoemaker v. Commonwealth Bank, 700 A.2d 1003, 1006 (Pa. Super. Ct. 1997)).

On the other hand, "[e]quitable estoppel is a doctrine that prevents one from doing an act differently than the manner in which another was induced by word or deed to expect." Novelty Knitting Mills, Inc. v. Siskind, 457 A.2d 502, 503 (1983). "A doctrine sounding in equity, equitable estoppel recognizes that an informal promise implied by one's words, deeds or representations which leads another to rely justifiably thereon to his own injury or detriment, may be enforced in equity." Id. (citations omitted). "The two essential elements of equitable estoppel are inducement and justifiable reliance on that inducement." Id.

---

[5] Even in the "limited circumstances" in which such a claim may be asserted independently, it only arises where a party to a contract demonstrates a lack of good faith in the enforcement or performance (not the formation) of a contract, such as when an insurer wrongfully seeks to avoid payments for an insured's claim. See Weisblatt v. Minn. Mut. Life Ins. Co., 4 F. Supp. 2d 371, 380 (E.D. Pa. 1998) (under Pennsylvania law, "[t]he duty of good faith and fair-dealing . . . applies only to the enforcement and performance of [insurance] contracts and not to their formation") (citations and quotations omitted).

Here, Plaintiff neglected to even address promissory estoppel in its opposition to the Motion before us today.  He failed to allege that Defendants made any express promise on which he detrimentally relied.  Burton Imaging Grp. v. Toys "R" Us, Inc., 502 F. Supp. 2d 434, 439 (E.D. Pa. 2007) (noting that under Pennsylvania law, a promissory estoppel claim requires an express promise; therefore, "a broad or vague implied promise will not suffice") (internal citations and quotations omitted).  Thus, even viewing the facts in the light most favorable to Plaintiff, nothing in his Complaint comes remotely close to alleging Defendants made an express promise on which he detrimentally relied.  Therefore, Plaintiff has not sufficiently pleaded a promissory estoppel claim.

Rather than an express promise, Plaintiff appears to argue that there was an implicit promise in the Proposed Agreement when it was strongly encouraged that the agreement be reviewed by an attorney.  (Pl.'s Opp. to Mot. to Dismiss at 9.)  Plaintiff argues by including this term, it was implied that the Defendants' counsel would respond to Plaintiff's counsel's raised issues.  However, under Pennsylvania law, equitable estoppel is seen as a shield (i.e., an affirmative defense) and not a sword (i.e., an independent cause of action).  See, e.g., Carlson v. Arnot-Ogden Mem. Hosp., 918 F.2d 411, 416 (3d Cir. 1990) (under Pennsylvania law, "[e]quitable estoppel is not a separate cause of action."); Matarazzo v. Millers Mut. Grp., Inc., 927 A.2d 689, 695 (Pa. Commw. Ct. 2007) (noting that equitable estoppel is a "wholly defensive doctrine"); Graham v. Pa. State Police, 643 A.2d 849, 852 (Pa. Commw. Ct. 1993) ("[E]quitable estoppel . . . has only been recognized as a defense and not as a cause of action in itself.");Wolcott v. Allstate Ins. Co., 33 Pa. D. & C.4th 341, 344 (Pa. Com. Pl. 1996) (noting "a promissory estoppel, unlike equitable estoppel, is an independent cause of action."); Weiland v.

11

DeFrancisis, 28 Pa. D. & C.4th 129, 133 (Pa. Com. Pl. 1996) ("[E]quitable estoppel is not an independent cause of action.").

We find that Pennsylvania law is quite clear that equitable estoppel may only be brought as an affirmative defense. Therefore, since Plaintiff has failed to allege an express promise, as required for a promissory estoppel claim, and cannot bring an equitable estoppel claim as an independent cause of action, his claim for estoppel must be dismissed.

### D. Leave to Amend

Plaintiff does not seek any leave to amend its Complaint. However, "even when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile . . . . Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." Alston v. Parker, 363 F.3d 229, 235-36 (3d Cir. 2004) (citing Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 115-16 (3d Cir. 2000)).

Regarding Plaintiff's breach of contract claim in Count I, we find that it would be futile to permit leave to amend since no amendment to the Complaint would change the fact that no valid contract existed between Plaintiff and Defendants. Plaintiff admittedly only "conditionally accepted" Defendants' offer, which does not create a binding contract between the parties under Pennsylvania law. See Hatalowich, 454 Pa. at 484; Miskin, 923 A.2d at 1181-82. Therefore, Count I of Plaintiff's Complaint alleging breach of contract is dismissed with prejudice.

We also find that it would be futile to permit a leave to amend Count II since no amendment to the Complaint would alter the fact that Plaintiff's claim for breach of the covenant of good faith and fair dealing is subsumed by his breach of contract claim under Pennsylvania

law.  See, eg., LSI Title, 951 A.2d at 391.  Therefore, Count II of Plaintiff's Complaint is dismissed with prejudice.

For Count III alleging estoppel, we also find that it would be futile to permit a leave to amend.  No amendment to the Complaint would allow Plaintiff to bring an equitable estoppel claim as an independent action, nor would it allow him to bring a promissory estoppel claim since there was no express promise made by Defendants.  Therefore, Count III of Plaintiff's Complaint alleging estoppel is dismissed with prejudice.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is granted.  Plaintiff's Complaint is dismissed with prejudice.

An appropriate Order follows.